UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BOWEN JAY AYLSWORTH ) | BK. NO. 04-1409 |
| ) | |
| Debtor. ) | CHAPTER 7 |
| ) | |
| BOWEN JAY AYLSWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | AP. NO. 04-67 |
| ) | |
| U.S. DEPARTMENT OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Bowen Jay Aylsworth (the "Debtor") seeks to discharge in excess of $100,000 in federally-guaranteed student loans owed to the U.S. Department of Education (the "DOE") on the grounds that being required to repay the obligation constitutes an undue hardship on him. For the reasons stated herein, the court finds that repayment of the loans does not constitute an undue hardship, and, therefore, the loans are excepted from discharge pursuant to § 523(a)(8).

## I. BACKGROUND

The Debtor is fifty-two (52) years old and a divorced father of three children, ages twenty-one (21), sixteen (16), and eleven (11). The two youngest children reside with their mother but visit the Debtor's home every other weekend, a few days during the week, and for four weeks each summer. In addition to paying child support, the Debtor provides food and care for the children during their visitations at his home.

The Debtor has been employed at Fairmont General Hospital as a respiratory therapist for approximately twenty years. He received his training as a respiratory therapist in 1972 and has been employed in that field since leaving the United States Marine Corps. The Debtor began studying geology at Indiana University in 1983 and then transferred to West Virginia University

1

in 1987, where he earned a Bachelors' degree in 1990. Because an entry-level position in the geology field would have paid approximately $10,000 less than his annual salary as a respiratory therapist, the Debtor enrolled in the masters program at West Virginia University to continue his study of geology. The Debtor was forced to return to full-time employment as a respiratory therapist when his wife was diagnosed with colon cancer, and he was unable to complete the masters program. When the couple divorced in 2002, the Debtor did not return to West Virginia University because his research had become outdated and he would have had to repeat the majority of his course work.

The Debtor drives a ten-year old car and lives in a small two-bedroom apartment. His only asset of significant value is a retirement account of approximately $43,000.[1] The Debtor works approximately 40 hours per week, and his gross income is in excess of $40,000 per year. However, after the Debtor's payroll deductions, the net deposit to his checking account is $561 every two weeks.[2] The Debtor's expenses, however, exceed this amount.

The Debtor suffers from obstructed sleep apnea, hypothyroidism, anxiety, depression, and degenerative problems with his spine and discs. The Debtor has been disciplined on one occasion for falling asleep at work, but his medical conditions have not otherwise interfered with his ability to perform his duties. However, according to the deposition of Dr. Eugenio Menez, the Debtor may only be able to continue working full time as a respiratory therapist for another four or five years.

## II. DISCUSSION

The Debtor contends that he has established that being required to repay his student loans would constitute an undue hardship on him. The DOE, however, suggests that discharge of the student loans is inappropriate because the Debtor has significant income and has failed to make a meaningful attempt to repay the obligation.

The court may only grant a discharge of an education loan when a debtor establishes an

---

[1] Fairmont General Hospital has provided the only contributions to the account.

[2] The Debtor's child support, taxes, union dues, and rent are deducted from his wages. The Debtor has an additional $70 deducted each pay for a savings account, which the court has added back to the net deposit in the checking account.

2

undue hardship by proving each of the three prongs of the *Brunner* test by a preponderance of the evidence. *Eddy v. U.S. Department of Education and Educational Credit Management Corporation (In re Eddy)*, No. 05-00210, 2006 Bankr. LEXIS 2545, *5-6 (Bankr. N.D.W. Va. September 28, 2006). The *Brunner* test requires a debtor to establish the following three criteria: (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and (3) that the debtor has made good faith efforts to repay the loans. *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987).

The second prong, requiring a debtor to demonstrate some rare circumstances that constitute a "certainty of hopelessness" for improvement in his current situation, is at the heart of the *Brunner* test.[3] *In re Frushour*, 433 F.3d 393, 401 (4th Cir. 2005) (*citing Brightful v. Pa. Higher Educ. Assistance Agency*, 267 F.3d 324, 328 (3rd Cir. 2001)). This prong is prospective in nature, requiring the Debtor to show exceptional circumstances beyond the current situation, such as "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Id.* "[O]nly a debtor with rare circumstances will satisfy this factor." *Id.*

The Debtor contends that he has satisfied the second prong by demonstrating that his medical conditions render the prospects for improvement in his current situation hopeless. The Debtor presented the deposition of Dr. Eugenio Menez as evidence of the numerous medical conditions afflicting the Debtor. According to Dr. Menez, the Debtor suffers from obstructive sleep apnea, hypothyroidism, anxiety, depression, and degenerative problems with his spine and discs. Dr. Menez suggests in his deposition that the Debtor may be unable to work full time in his present occupation in four or five years, but he may still be able to work part time as a respiratory therapist.

While the deposition is helpful in understanding the nature of the Debtor's medical

---

[3] Because the court finds that the Debtor has failed to satisfy the second and third prongs, it is not necessary to address the first prong. The court will assume, without finding, that the Debtor is able to satisfy the first prong.

3

conditions and the possible effect that they may have on his ability to work as a respiratory therapist, it offers no insight to the Debtor's ability to work in other fields. As the court observed from his testimony, the Debtor is an intelligent and well-spoken individual with a Bachelor's degree in geology. While the evidence offered suggests that he may not be able to continue as a respiratory therapist on a full-time basis in four or five years, the Debtor has not produced sufficient evidence to support the contention that he will be unemployable in other fields in four or five years. Furthermore, Dr. Menez does not discount the suggestion by the DOE that the Debtor's medical conditions may be corrected or improved with surgery. *See In re Barrows*, 182 B.R. 640, 649 (Bankr. D.N.H. 1994) ("In general, to determine dischargeability of student loans, the court is most concerned with the future employability of the debtor").

While the Debtor suggests that his income may be decreased due to his inability to work full time in four or five years, the DOE points to the fact that the Debtor's expenses will decrease significantly as his children reach age eighteen (18). The Debtor currently pays $547 monthly for child support. In June 2008, the child support will decrease to $379.86. Then in April 2013, the Debtor will no longer have any child support obligations. Unlike the speculation of a possible decrease in income, the decrease in expenses is certain to occur. Because the evidence definitively demonstrates a decrease in expenses and only speculates of a possible decrease in income, the Debtor has failed to establish a certainty of hopelessness as is required by the second prong of the *Brunner* test.

The third prong of the *Brunner* test requires that the Debtor demonstrate that he has made good faith efforts to repay the loans. The third prong requires an examination of a debtor's "efforts to obtain employment, maximize income, and minimize expenses." *In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005). Beyond these factors, the court must also examine whether the hardship is a result of factors beyond the debtor's control and whether the debtor has made the "requisite effort to repay her loans." *Id.* Accordingly, a debtor's lack of any meaningful repayment effort is indicative of a lack of good faith. *See Cunningham v. Sallie Mae Servicing Corp.*, No. 5:05CV198, 2006 U.S. Dist. LEXIS 24427 at *12 (N.D.W. Va. 2006) (finding that a sole payment of $25.00 toward a graduate loan and failure to make any regular payments toward the loans were relevant to a finding of a lack of good faith); *In re Perkins*, 318 B.R. 300, 312

4

(Bankr. M.D.N.C. 2004) (holding that obtaining repeated forebearance while not even paying the accruing interest unnecessarily increases indebtedness). *McNemar v. Student Loan Servicing Center (In re McNemar)*, 352 B.R. 621, 624 (Bankr. N.D.W. Va. 2006) (holding that paying $900 toward a $2,000 student loan is commendable but insufficient to establish good faith when the debtor voluntarily ceased making payments, ignoring the obligation for ten years).

The Debtor argues that he has made a good faith effort to repay his loans because he has reduced his expenses and maximized his earning potential even though his efforts have failed to produce any disposable income with which to make payments on the obligation. Furthermore, the Debtor suggests that he has demonstrated his good faith by considering an income contingent repayment plan even though he was unable to participate in the plan because the payments required were too high. The Debtor defaulted on his loans in April 2002 and received his first notification from the DOE in August 2002. The student loans remained in default for nearly two years with no communication from the Debtor. After failing to contact the DOE for nearly two years, the Debtor finally began communicating with the DOE just before he filed for bankruptcy. The Debtor offered no explanation for this two-year period of default and did not assert an inability to make any payments. *See Murphy v. CEO/Manager, Sallie Mae (In re Murphy)*, 305 B.R. 780, 798-800 (Bankr. E.D. Va. ) (surveying recent decisions of the courts of the Fourth Circuit and finding a clear majority of courts determining a lack of good faith where the debtor has made minimal or no payments on student loans); *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993) (stating that a "[d]ebtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control"); *Wilson v. Education Credit Mgmt. Corp.(In re Wilson)* No. 01-3128, 2002 Bankr. LEXIS 1743 at *4 (Bankr. E.D. Va. June 25, 2002) (finding good faith where debtor made consistent payments on her student loans for twelve years, and an additional twenty-nine payments after consolidating her loans). Considering the amount of debt owed to the DOE, the Debtor has not shown any meaningful attempt to repay his obligation.

Not only did the Debtor fail to make payments for two years, but he did not communicate with the DOE or seek forebearance. The Debtor merely ignored his responsibility on a debt in excess of $100,000 for two years. *See; In re Phillips*, 161 B.R. 945, 948 (Bankr. N.D. Ohio

1993) (finding that the debtor's failure to seek a less drastic remedy of deferment of payments before attempting to discharge the loan evidenced a lack of good faith); *Floyd v. Educ. Credit Mgmt. Corp.*, 54 Fed. Appx. 124, 126 (4th Cir. 2002) (finding good faith when the debtor kept in frequent contact with his lenders, investigated loan consolidations and payment options, arranged for deferrals and forebearance, and made partial payments for a year); *Greenwood v. Educ. Credit Mgmt. Corp. (In re Greenwood)*, 349 B.R. 795, 804 (Bankr. D. Ariz. 2006)) ("By making payments when he could, by timely requesting deferrals and forebearances, by attempting to maximize his income and minimize his family's expenses, Mr. Greenwood has satisfied the third prong of the *Brunner* test"). Allowing such an extreme amount of debt to remain in default for two years without seeking forebearance or making interest payments is further indicia of a lack of good faith on the part of the Debtor. Given the Debtor's lack of meaningful repayment and failure to communicate with the DOE while the loans where in default for two years, the Debtor has failed to satisfy the third prong of the *Brunner* test..

### III. CONCLUSION

The Debtor bears a heavy burden in attempting to discharge his student loan obligations under § 523(a)(8). The Debtor has failed to carry his burden to establish an undue hardship; therefore, the student loan obligation owed to the DOE is excepted from discharge pursuant to § 523(a)(8).

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

Entered: 8/30/07

Ronald G. Pearson
United States Bankruptcy Judge

6